UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RHONDA L. MERRITT,

    Plaintiff,

v.                                        Case No: 8:17-cv-712-T-27JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Rhonda L. Merritt, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A. Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 28, 2012. (Tr. 71, 189–94, 195–203.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 114–18, 123–28, 130–34, 136–40.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 40–57.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 28–35.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 3–8.) Plaintiff then

timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning on April 1, 2010. (Tr. 70.) Plaintiff has a limited education. (Tr. 33.) Plaintiff alleged disability due to nodules in her lungs, chronic obstructive pulmonary disease, osteoporosis, and compound fractures. (Tr. 70.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 1, 2010, the alleged onset date. (Tr. 30.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, chronic obstructive pulmonary disease, and obesity. (Tr. 30.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 31.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff cannot be exposed to pulmonary irritants, such as dust, fumes, gases, or chemicals, and must avoid temperature extremes and humidity. (Tr. 31.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 32.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 33.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other

jobs existing in significant numbers in the national economy, such as a document preparer, audit clerk, and eye glass assembler.  (Tr. 34.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 34–35.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).

A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in evaluating Plaintiff's mental impairments; (2) the ALJ erred by not ordering a psychological evaluation; (3) the ALJ failed to obtain Plaintiff's waiver of her right to representation at the

hearing; (4) the ALJ precluded Plaintiff from cross examining the VE as to one area of inquiry; and (5) did not properly inform Plaintiff about the date she was last insured or evaluate evidence predating her alleged onset date. For the reasons that follow, it is recommended that these contentions do not warrant reversal.

### A. Psychiatric Review Technique

Plaintiff's first contention is that the ALJ erred by not performing the Psychiatric Review Technique after Plaintiff presented a colorable claim of mental impairment based on her diagnosis of opioid dependence, evidence of her low global assessment of functioning score ("GAF"), and hearing testimony about her mental impairments. (Dkt. 18 at 8–9.) In response, Defendant argues that the evidence shows Plaintiff has a substance abuse issue rather than a mental impairment, and Plaintiff did not meet her burden of showing disability if she ceased her drug use. (Dkt. 21 at 5–7.)

"Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a. Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Moore*, 405 F.3d at 1213–14; 20 C.F.R. § 404.1520a(c)(3). Use of the PRTF is required when the claimant "has presented a colorable claim of mental impairment." *Moore*, 405 F.3d at 1214 (holding that when a claimant presents a colorable claim of mental impairment, ALJ's failure to comply with PRTF regulations requires remand); *Mills v. Comm'r of Soc. Sec.*, 659 F. App'x 541 (11th Cir. 2016) (same).

Here, the ALJ concluded that although Plaintiff testified that she has "some mental impairments," the record showed no evidence of treatment for any psychological condition. (Tr. 33.) Plaintiff argues that the ALJ was required to perform the PRTF based on the following evidence: Plaintiff's representative's testimony that Plaintiff talks to herself, cannot afford to see a psychiatrist, and takes medication for anxiety (Tr. 46–48, 56); and hospital records showing Plaintiff was diagnosed with opioid dependence and had a GAF score of 58 (Tr. 502). Defendant, in contrast, argues that this evidence shows that Plaintiff has opioid dependence, not a mental impairment. (Dkt. 21 at 5–6.) Plaintiff's opioid dependence cannot be a contributing factor material to a finding that Plaintiff is disabled, Defendant contends. (*Id.* at 6.)

First, Defendant is correct that the evidence Plaintiff cites in support of her argument shows her opioid dependence. Other than her hearing testimony, the only evidence Plaintiff cites is a September 2012 hospital record in which Plaintiff was admitted for bacteremia. (Tr. 502.) The physician diagnosed Plaintiff with opioid dependence and noted that Plaintiff was found injecting medications in her hospital bathroom. (*Id.*) The physician found "no indication of an underlying mood or anxiety disorder," and that reports of panic attacks "appear more consistent with rebound anxiety while on [prescription drug] xanax, and have resolved with discontinuation of xanax." (*Id.*) Further, the medication Plaintiff states she was prescribed for anxiety, Ativan, was prescribed during the same September 2012 hospital stay to ease Plaintiff's opioid withdrawal. (Tr. 580.) Finally, the opinions of the State agency physicians Plaintiff contends the ALJ did not acknowledge relate to the physicians' opinions that Plaintiff has substance addiction disorders. (Tr. 73–74, 83–84.) Thus, upon review of the evidence Plaintiff cites, Plaintiff has not raised a colorable claim of mental impairment.

Also, as Defendant argues, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In cases where substance abuse is an issue, a finding of disability is appropriate only when the claimant's impairments remaining after the claimant stopped abusing substances would be disabling. 20 C.F.R. § 404.1535(b); *see Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination."). Again, because the evidence Plaintiff cites shows her opioid addiction, she does not present any argument that, absent substance abuse, Plaintiff's impairments would be disabling. For these reasons, it is recommended that Plaintiff's first contention does not warrant reversal.

### B. Psychological Consultative Examination

Plaintiff's next argument is that the ALJ should have ordered a consultative examination be conducted in light of Plaintiff's testimony about her mental impairments, which were discussed in Section A. (Dkt. 18 at 12–16.) Specifically, Plaintiff argues that her testimony regarding having received a bipolar diagnosis and evidence of her opioid dependency diagnosis and use of medication, the ALJ should have ordered a psychiatric evaluating to assess the existence of and limitations caused by Plaintiff's metal impairments. (*Id.* at 15.) In response, Defendant argues there was sufficient information for the ALJ to render a decision and, therefore, ordering a psychological evaluation was unwarranted. (Dkt. 21 at 10–12.)

The ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); 20 C.F.R. § 404.1519a(b)

(explaining that the Commissioner may order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow . . . a determination or decision"). Ultimately, however, "[e]ven though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram*, 496 F.3d at 1269.

Given the previous finding that Plaintiff did not raise a colorable claim of mental impairment, *see* discussion *supra* Section A, it is likewise recommended that the record contained sufficient evidence for the ALJ to make an informed decision such that an additional psychological evaluation was unnecessary. Further, Plaintiff did not allege a mental disability in her application for disability benefits, instead stating that nodules on her lungs, COPD, osteoporosis, and compound fractures in her back limit her ability to work (Tr. 193). *See Hethcox v. Comm'r of Soc. Sec.*, 638 F. App'x 833, 835 (11th Cir. 2015) (noting that the claimant's argument that the ALJ should have ordered a psychiatric evaluation was undermined because claimant "did not allege a mental disability in her disability report"). Finally, and importantly, Plaintiff fails to make a showing of prejudice, i.e., how a psychological evaluation would have an effect on the ALJ's decision. Therefore, it is recommended that Plaintiff's contention does not warrant remand.

    **C.**    **Waiver of Right to Representation**

Next, Plaintiff argues that the ALJ failed to apprise Plaintiff of her right to an attorney at the hearing. (Dkt. 18 at 10–12.) In response, Defendant contends Plaintiff was informed of her right to an attorney before and during the hearing and, thus, voluntarily and knowingly waived her right to an attorney at the hearing. (Dkt. 21 at 7–9.)

Pursuant to 42 U.S.C. § 406, the Commissioner of Social Security is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in

presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c). The Eleventh Circuit has recognized that "[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Where a claimant has not been adequately informed of her statutory right, however, her waiver is not "knowingly and intelligently" made. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). "The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong." *Graham*, 129 F.3d at 1422.

Plaintiff was represented until her attorney withdrew in November 2013. (Tr. 156.) Before the administrative hearing, the Commissioner sent Plaintiff a letter in October 2014 informing her of her right to representation at the hearing. (Tr. 163.) The letter explained that any representative may only receive a fee if the Commissioner approves the fee agreement and that many representatives charge a fee only if the claimant receives benefits, while other representatives provide services for free. (Tr. 163.) The Commissioner enclosed a brochure with detailed information regarding Plaintiff's right to representation. (Tr. 168–69.) During her administrative hearing, the ALJ opened the hearing by asking Plaintiff whether she wanted to continue without being represented by an attorney, to which Plaintiff responded affirmatively:

> ALJ: --to have you today. We've been over your right to have an attorney. It's my understanding that you wish to not have an attorney represent you and to go forward today without a lawyer representing you, and seek the advice of this nice lady who is your friend?
> CLMT: Yes, sir.
> ALJ: Okay. Well, I'll note then, that you have waived your right to have a lawyer represent you and have elected to go forward today without a lawyer representing you.
> CLMT: Yes, sir.

> ALJ: Okay. As I mentioned before, my name is Charles Arnold. I'm the administrative law judge who's been assigned to hear your case today. Do you have any questions about our hearing before we begin today?
> CLMT: No, sir.
> ALJ: Okay.

(Tr. 42.)

Contrary to Plaintiff's argument, she was notified before her hearing about her right to representation, including ways to obtain free legal services (Tr. 168–69), and the ALJ confirmed Plaintiff's desire to go forward with her hearing without an attorney (Tr. 42). Based on the foregoing, Plaintiff knowingly and voluntarily waived her right to representation. Further, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham*, 129 F.3d at 1423; *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (explaining that regardless of whether a claimant waived her right to counsel, the claimant must show prejudice to obtain a remand). Plaintiff states she was prejudiced by her lack of counsel but provides no argument in support of this statement, which violates the Court's Scheduling Order. (Dkt. 15) (ordering that "all discrete challenges must be supported by specific citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports each challenge. Any contention for which these requirements are not met is subject to being disregarded for insufficient development and denied without further consideration"). Accordingly, because the record shows that Plaintiff waived her right to representation and, even if this were not the case, Plaintiff presents no argument warranting remand, it is recommended that Plaintiff's contention be rejected.

D. **Cross Examining the VE**

Plaintiff next contends that her due process rights were violated because "the ALJ did not permit the Plaintiff's friend-representative to cross-examine the vocational expert when the friend-representative started asking the VE about the impact from the Plaintiff talking to herself would have on her ability to work." (Dkt. 18 at 17–19.) At the hearing, after the ALJ posed hypotheticals to the VE, the ALJ asked Plaintiff and her friend Ms. Slack, who was acting as Plaintiff's representative at the hearing, whether they had questions for the VE. (Tr. 52.) Ms. Slack then asked the VE whether her testimony would change given that Plaintiff has no education in certain fields, cannot sit, stand, or walk for long periods of time, cannot use her hands repetitively, and has a "broken back" and COPD. (Tr. 53–55.) The VE answered each of these questions. (*Id.*) This colloquy followed:

> ALJ: Anything further, ladies, you want to ask of the vocational expert witness?
> REP: Well, she talks to herself and answers. I'm assuming that an employer wouldn't want to hire somebody who talks to themselves and answers themselves. I think that would be kind of odd.
> ALJ: We don't want to get into your impressions about the case. Do you have any questions for the VE before she hangs up?
> REP: No, sir.
> ALJ: Okay. Well, that concludes your testimony in this case. Thank you for your availability, Ms. Franklin. You're excused.
> VE: Thank you, sir.
> REP: Your honor, I was just wondering if she could ask that question. I'm sorry.
> ALJ: That's fine. Well, the VE's gone now.

(Tr. 55.)

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This includes the ability to cross-examine witnesses. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 269 (1969). As stated above, "there must be a showing of prejudice before it is found that the claimant's right to due process has been

violated to such a degree that the case must be remanded . . . for further development of the record." *Graham*, 129 F.3d at 1423.

Plaintiff, through her representative asked the VE many questions on cross examination. *Contra Marin v. Comm'r of Soc. Sec.*, 535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008) (finding prejudice where the ALJ prohibited the claimant from asking the VE any questions other than hypotheticals). It does appear, however, that the representative's final question about what effect Plaintiff's talking to herself would have on the VE's testimony was cut short. Specifically, the VE instructed Plaintiff's representative not to include her impressions of Plaintiff's case ("I think that would be kind of odd"), and again asked if they had any other questions before the VE was excused, to which the representative replied, "No, sir." (Tr. 55.) After the VE was excused, Plaintiff's representative requested to ask the question, to which the ALJ responded, "Well, the VE's gone now." (*Id.*) However, as Defendant argues (Dkt. 21 at 13), even if the representative had been able to pose this question to the VE and the VE testified that this limitation would preclude Plaintiff from performing all work, there is no prejudice. This is because Plaintiff did not offer any evidence of her talking to herself beyond the representative's statement at the hearing, there is no evidence of this condition in Plaintiff's treatment notes, and the ALJ did not discuss this alleged impairment in his decision. Thus, because there is no showing of prejudice that Plaintiff's "due process has been violated to such a degree that the case must be remanded . . . for further development of the record," *Graham*, 129 F.3d at 1423, it is recommended that Plaintiff's contention does not warrant reversal.

### E. Relevant Time Period

Plaintiff's final contention is that the ALJ did not (1) properly inform Plaintiff of her date last insured or (2) reference evidence regarding Plaintiff's spine that predated her alleged onset

date. (Dkt. 18 at 19–20.) Plaintiff's first contention is contradicted by Plaintiff's notice of hearing, which informed Plaintiff in advance of her hearing: "Our records indicate that your date last insured is June 30, 2010. If this is correct, I must decide whether you became disabled on or before that date." (Tr. 164.) Thus, it is recommended that this contention does not warrant reversal.

Regarding her second contention, Plaintiff neglects to mention that the evidence she contends the ALJ failed to mention is from years before her alleged onset date of April 1, 2010. (Dkt. 18 at 19–20) (citing Tr. 784 through 786, which are radiology records from September 2007 and June 2009). It is Plaintiff's burden to establish her disability during the relevant time period, the time between her alleged onset date and date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) ("[T]o prove her eligibility for DIB [disability insurance benefits], [claimant] had to prove that she suffered from a disability between her alleged onset of December 2004, and her last-insured date of December 2005."). Thus, Plaintiff's citing records from years before she alleges she became disabled is unpersuasive because "disability must be proven to exist during the time that the claimant is insured." *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Nonetheless, the ALJ's failing to specifically discuss these 2007 and 2009 MRI records was harmless because the findings in these records are consistent with the ALJ's findings based on a review of Plaintiff's 2012 MRI records. The September 2007 records show that Plaintiff had "sclerosis and hypertrophy in the left L5-S1 facet joint" (784, 786), which the ALJ noted in his decision when he summarized a 2012 MRI showing "a disc protrusion at L5-S1" (Tr. 32). And the physician's impressions from the June 2009 treatment notes are consistent with the ALJ's findings from the 2012 MRI: the physician found a small disc herniation in S1-2, mild degenerative disc disease at L5-S1, and only mild bulging in her remaining discs (Tr. 785), which are consistent

with the ALJ's noting the presence of disc bulges, loss of disc height, and disc protrusion (Tr. 32). Accordingly, it is recommended that Plaintiff's final contention also does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on May 11, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James D. Whittemore
Counsel of Record